<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MIGUEL A. FELIZ, | Civ. No. 06-3554 (DRD) |
| Plaintiff, | |
| v. | **O P I N I O N** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

*Appearances by:*

STEVEN GAECHTER, Esq.
58 Main Street
Hackensack, NJ  07601

 *Attorney for Plaintiff*

CHRISTOPHER J. CHRISTIE
UNITED STATES ATTORNEY for the District of New Jersey
by Karen G. Fiszer, Esq.
Special Assistant U.S. Attorney
26 Federal Plaza, Room 3904
New York, NY  10278

 *Attorney for Defendant*

<u>**DEBEVOISE, Senior District Judge**</u>

 Pursuant to § 205(g) of the Social Security Act, Plaintiff, Miguel A. Feliz ("Plaintiff"),

seeks this Court's review of the Commissioner of Social Security's ("Commissioner") final

determination that Plaintiff is not disabled, and therefore not entitled to Disability Insurance

Benefits.  Plaintiff seeks reversal of the Commissioner's decision on the grounds that the

Administrative Law Judge ("ALJ") committed legal errors in reaching his decision and that the

ALJ's conclusions are not supported by substantial evidence.  For the reasons set forth below, the

Commissioner's decision will be reversed and the case remanded for further proceedings.

## I. BACKGROUND

Plaintiff is a native of the Dominican Republic, who came to the United States in 1986

and who has since become a United States citizen.  (R. at 27.)  Plaintiff obtained a full high

school education in the Dominican Republic, but has not received any education within the

United States.  Plaintiff has previously been gainfully employed within the cleaning and

housekeeping industry, but ceased work on May 14, 2002, claiming an inability to continue due

to neck and back pain.  (R. at 28.)  Plaintiff has also been treated for depression and has

complained of gout affecting his feet and hands.  (R. at 28, 31.)

Plaintiff first filed an application for Disability Insurance Benefits for a period of

disability on April 28, 2004.  (R. 16, 77-79.)  In the application, Plaintiff alleged an inability to

work due to back and neck pain, but did not mention that depression or any other form of mental

illness prevented him from working.  (R. at 16.)  Plaintiff's application for Disability Insurance

Benefits was denied by the Regional Commissioner of the Social Security Administration (R. at

39-41), as was Plaintiff's request for reconsideration (R. at 46-48).

Plaintiff then requested a hearing before an Administrative Law Judge (R. at 49), which

was granted (R. at 56-57, 61-64).  Plaintiff appeared with counsel before ALJ Dennis G. Katz on

April 6, 2006 where Plaintiff, through an interpreter, testified concerning his ability to

comprehend and converse in English; what Plaintiff believed prevented him from working; the treatment of his ailments; and his travels to the Dominican Republic.  (R. at 26-35.)

In addition to the hearing testimony, the ALJ considered medical evidence that was submitted by Plaintiff and medical evidence from independent sources.  Several reports document Plaintiff's neck and lower back pain, which began after Plaintiff lifted a heavy object in March 2001.  Plaintiff received chiropractic manipulations and physical therapy twice a week for several months.  The ALJ found that this treatment alleviated Plaintiff's ailments as there was no indication that Plaintiff sought further treatment.

Plaintiff was next examined in June 2003 in connection with a workers' compensation claim.  An independent medical examiner, Theodora Maio, M.D., opined that Plaintiff suffered from a "permanent orthopedic disability of 45% of total" that likely resulted from Plaintiff's March 2001 injury.  (R. at 166.)

Following his application for Disability Insurance Benefits in April 2004, Plaintiff was examined by a consultative examiner retained by New Jersey's Department of Labor and Workforce Development, Luis Vassallo, M.D., on August 11, 2004, and given a Residual Functional Capacity Assessment by R. Briski, M.D. on August 31, 2004.  Dr. Vassallo's report concluded that Plaintiff had "diminished motion of the cervical spine, chronic back pain and chronic neck pain without any neurological deficit, most probably due to degenerative disc disease."  (R. at 210.)  The report also noted that Plaintiff had "a very sensitive toe, most probably due to gouty attack," but Plaintiff did not "need any hand-held assistive device for ambulation" or have any difficulty using "both hands for fine and gross manipulation."  Id.

The Residual Functional Capacity Assessment conducted later in the same month

3

similarly reported that Plaintiff suffered from lower back and neck pain.  (R. at 219.)  The
Assessment also reported that Plaintiff could occasionally lift and/or carry 20 pounds and
frequently lift and/or carry 10 pounds; that Plaintiff could walk and/or stand, with normal breaks,
for about six hours in an eight-hour workday; that Plaintiff could sit, with normal breaks, for
about six hours in an eight-hour workday; and that Plaintiff was unlimited in his ability push
and/or pull, including the operation of hand and/or foot controls.  (R. at 215.)  Based on these
observations, the Assessment concluded that Plaintiff's "impairment should not result in any
long term disability, as he had corrective surgery for [his hernia],[1] which should result in
symptomatic improvement" and that Plaintiff's "limitations are due to the recent hernia surgery,
and do not reflect long term limitations."  (R. at 219, 220.)

Finally, progress notes and a report from Plaintiff's psychiatrist, Leo A. Dela Cruz, M.D.,
stated that Plaintiff was treated for depression with some regularity (R. at 226-30) and that, in Dr.
Dela Cruz's opinion, Plaintiff is unable to maintain attention for a two hour segment; accept
instructions and respond appropriately to criticism from supervisors; or get along with co-
workers without unduly distracting them or exhibiting behavioral extremes (R. at 249).  Dr. Dela
Cruz did find, however, that Plaintiff was either limited, but satisfactory, or not precluded, in
thirteen other categories of mental abilities and aptitudes necessary for unskilled work.  Id.

After considering the medical evidence and the hearing testimony, the ALJ issued a
decision denying Plaintiff's request for Disability Insurance Benefits for a period of disability.
(R. at 23.)  Contained in the decision were the ALJ's findings of fact and conclusions of law,

---

[1] Dr. Barry Sussman performed an operation to repair Plaintiff's bilateral inguinal hernias
on July 10, 2004.  (R. at 186-87.)

which were:

1.  The claimant met the special insured status requirement of the [Social Security] Act on May 14, 2002 (his alleged onset date) and continues to meet them through December 31, 2006.

2.  The claimant has not engaged in "substantial gainful activity" from his alleged onset date through, at least, the date of this Decision [April 21, 2006].

3.  The claimant does have "severe" impairments consisting of major depression and a back disorder.

4.  The claimant's impairments do not "meet" any impairment [found] in the [Code of Federal Regulations] Listings.

5.  The claimant retains the "residual functional capacity" to perform the full range of medium exertion level work.  He also has a significant Affective Disorder, but it does not prevent him from performing substantial gainful work activity.

6.  The claimant is able to perform his "past relevant work."

7.  The claimant has not been under a "disability"—as defined in § 216(*i*) and § 223 of the [Social Security] Act—from May 14, 2002 (his alleged onset date) through, at least, the date of this Decision [April 21, 2006].

(R. at 18, 22, 23.)

Plaintiff timely appealed the ALJ's decision to the Social Security Administration's Appeals Council.  (R. at 11.)  The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner.  (R. at 5.)  It is of this opinion, as the final decision of the Commissioner, that Plaintiff now seeks review.

## II. DISCUSSION

The only two issues before the Court are whether the appropriate legal standards were applied and whether the Commissioner's decision to deny Plaintiff's application for Disability Insurance Benefits is supported by substantial evidence.  Plaintiff asserts that the ALJ erred by improperly assuming the role of a medical expert in assessing Plaintiff's mental impairment and

by failing to call for vocational expert testimony to assess Plaintiff's mental impairment. Plaintiff also asserts that the Commissioner's conclusions as to Plaintiff's residual functional capacity and as to Plaintiff's ability to comprehend and communicate in English are not supported by substantial evidence.  A review of the administrative record shows that the ALJ's conclusion as to Plaintiff's ability to perform past relevant work is not supported by substantial evidence and therefore remand is necessary.

**A.  Standard of Review**

A district court's review of the Commissioner's factual conclusions is deferential and limited to determining whether the conclusions are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  A district court is bound by the Commissioner's factual findings that are supported by substantial evidence, even if the district court would have reached a different factual conclusion.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  A district court, however, exercises plenary review of all legal issues in a case.  Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).

**B.  Determination of Disability**

Under the Social Security Act, Disability Insurance Benefits are provided to individuals who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  To constitute a disability, the impairment must be "expected to result in death" or "last for a continuous period of not less than 12 months," § 423(d)(1)(A), and be "of such severity that [the individual] is not only unable to do his previous work but cannot, considering his age, education, and work

6

experience, engage in any other kind of substantial gainful work," § 423(d)(2)(A).

An ALJ determines whether an individual is disabled, and therefore entitled to Disability Insurance Benefits, by using a five-step evaluation process.  See 20 C.F.R. § 404.1520(a).  A finding by the ALJ at any of the steps that the individual is either disabled or not disabled ends the inquiry.  The five stages of inquiry proceed as follows:

*Step 1: Substantial Gainful Activity.*  The ALJ must first determine whether the claimant is engaging in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(*i*).  Substantial gainful activity is work activity that involves doing significant mental or physical activity for pay or profit. 20 C.F.R. § 404.1572.  If the ALJ finds that the claimant is engaging in substantial gainful activity, then the ALJ must find that the claimant is not disabled.  § 404.1520(a)(4)(*i*).

*Step 2: Severity of Impairment.*  If the claimant is not engaged in any substantial gainful activity, the ALJ must then determine the medical severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(*ii*).  An impairment is severe when it significantly limits the individual's physical or mental ability to do basic work activities.  § 404.1520(c).  If the ALJ finds that an individual's impairment is not severe or has not met the 12 month durational requirement, then the ALJ must find that the claimant is not disabled.  § 404.1520(a)(4)(*ii*).

*Step 3: Listed Impairments.*  If the ALJ determines that the claimant's impairment is severe, then the ALJ compares the medical evidence of the impairment to a list of impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P.  20 C.F.R. § 404.1520(a)(4)(*iii*).  The impairments listed in Appendix 1 are presumed severe enough to preclude substantial gainful activity.  If the ALJ finds that the individual's impairment is listed in Appendix 1 and has met the 12 month durational requirement, then the ALJ must find that the claimant is disabled.

§ 404.1520(a)(4)(*iii*).

Step 4: Past Relevant Work.  If, however, the individual's impairment is not listed in Appendix 1, then the ALJ must consider whether the claimant possesses the residual functional capacity to do his past relevant work.  20 C.F.R. § 404.1520(a)(4)(*iv*).  Residual functional capacity covers those activities that an individual is still able to do despite the limitations caused by his impairment.  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000).  If the ALJ finds that the individual has the capacity to perform past work, then the ALJ must find that the claimant is not disabled.  § 404.1520(a)(4)(*iv*).

Step 5: Adjustment to Other Work.  If the claimant cannot perform past work, then the ALJ must consider the individual's residual functional capacity, age, education, and work experience to determine whether the claimant can perform other work.  20 C.F.R. § 404.1520(a)(4)(*v*).  Other work includes "any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A).  If the ALJ finds that the individual has the capacity to adjust to other work, then the ALJ must find that the claimant is not disabled.  § 404.1520(a)(4)(*v*).  However, if the ALJ finds that the individual cannot adjust to other work, then the ALJ must find that the claimant is disabled.  Id.

While the individual claimant bears the burden of persuasion on steps one through four, the burden shifts to the Commissioner on the fifth step.  At the fifth step, the Commissioner must prove that the individual is capable of obtaining gainful employment other than his past relevant work and that jobs, which the individual can perform, exist in substantial numbers in the national

8

economy.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

**C.  The Commissioner's Findings and Conclusions**

In this case, the ALJ applied the five step analysis and concluded at the first step that Plaintiff was not engaging in any substantial gainful activity.  At the second and third steps, the ALJ determined that Plaintiff had two severe impairments, major depression and a back disorder, but neither of these two impairments were listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P. Neither party challenges these first three conclusions.

At the fourth step, the ALJ considered Plaintiff's residual functional capacity and concluded that Plaintiff retained the ability to perform the full range of medium exertion level work and, despite a "significant affective disorder," that Plaintiff was able to perform past relevant work or other substantial gainful activity.  (R. at 18, 22.)  In reaching this conclusion, the ALJ relied on the independent evaluation by Dr. Vassollo, which was supported by Plaintiff's Residual Functional Capacity Assessment and consistent with the evaluation of Dr. Sussman, one of Plaintiff's treating physicians; a Mental Impairment Questionnaire that was completed by Plaintiff's psychiatrist, Dr. Dela Cruz; and Plaintiff's subjective symptomatology and overall credibility.  Following this conclusion on Plaintiff's residual functional capacity, the ALJ deemed Plaintiff to be not disabled and therefore not entitled to a period of Disability Insurance Benefits. (R. at 23.)

Plaintiff submits that the ALJ erred in reaching the conclusion that Plaintiff was able to perform past relevant work in two ways: first, because the ALJ improperly assumed the role of a medical expert in discrediting the uncontroverted opinion of Plaintiff's treating psychiatrist and second, because the ALJ did not call for the testimony of a vocational expert to assess the

functional limitations caused by Plaintiff's depression.  Plaintiff further submits that the ALJ's

conclusions at step four of the disability analysis regarding Plaintiff's ability to engage in

medium exertion level work and the ALJ's conclusions regarding Plaintiff's English literacy are

not supported by substantial evidence.

The Court concludes that the ALJ's finding that Plaintiff has the ability to engage in

medium exertion level work is not supported by the evidence, and consequently, that the ALJ's

further finding that Plaintiff has the ability to perform past relevant work was reached in error.

Therefore, the case must be remanded for further proceedings.  Additionally, the Court observed

errors in the ALJ's evaluation of the degree of functional loss resulting from Plaintiff's claimed

mental impairment that should not be repeated on remand.

### (1) The ALJ's Conclusions at Step Four

Plaintiff argues that the ALJ's conclusions relating to Plaintiff's residual functional

capacity are not supported by substantial evidence.  The ALJ found that Plaintiff possessed the

residual functional capacity to perform medium level work.  (R. at 18, 21.)  Plaintiff's past

relevant work in the housekeeping industry was characterized by the ALJ as medium level work.

Thus, the ALJ concluded that Plaintiff was able to perform his past relevant work.

Because the ALJ found that Plaintiff was able to perform his past relevant work, he

concluded, at the fourth step, that Plaintiff was not disabled.  (R. at 23.)  These conclusions were

purportedly based on Plaintiff's testimony before the ALJ and evidence from the record,

including Plaintiff's application for disability benefits, in which he stated that in his past jobs he

frequently lifted 50 pounds or more.  (R. at 94.)  The ALJ's conclusion regarding Plaintiff's

ability to engaged in medium exertion level work, however, is not supported by substantial

evidence and therefore remand is necessary to determine whether Plaintiff is disabled.

According to the Social Security Administration's physical exertion requirements, medium work involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).  Light work, however, involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  §404.1567(b).  A job that does not require much lifting may still be categorized as light work when "it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  Id.  An individual will be considered capable of doing light work if he or she has the ability to do substantially all of the activities listed in the description of light work.  Id.

In Plaintiff's April 22, 2004 application for Disability Insurance Benefits, Plaintiff described the requirements of his housekeeping work as: "mopping, picking up garbage and other maintenance"; lifting and carrying "boxes of garbage, mop, bucket, cleaning machines, bags, etc."; occasionally requiring lifting of 100 pounds or more; and frequently requiring lifting of 50 pounds or more.  (R. at 94.)  During each work day, Plaintiff stated that he spent 4.5 hours walking and 7.5 hours standing.  Id.   Thus, there is no doubt that Plaintiff's past relevant work constitutes medium level work.

The medical evidence submitted in this case, however, does not support the conclusion that Plaintiff is capable of engaging in medium work, but rather, at the most, could only support a conclusion that Plaintiff is capable of engaging in light work.  Indeed, the ALJ thought as much himself when reviewing the reports of the treating and consultative physicians.  First, the ALJ noted that the Residual Functional Capacity Assessment, which was performed by Dr. Briski, a

11

state reviewing physician, stated that Plaintiff could occasionally lift or carry up to 20 pounds and sit, stand, or walk for about six hours in an eight hour day.  (R. at 215.)  The ALJ then noted that Dr. Briski's evaluation of Plaintiff's residual functional capacity was consistent with the opinion of Dr. Sussman, one of Plaintiff's treating physicians, who opined that Plaintiff could not lift or carry more than 20 pounds.  (R. at 143.)  Thus, the ALJ concluded during his review of Plaintiff's medical records that the evaluations were consistent with an ability to do light work. (R. at 19.)

Given that the medical evidence could only support a finding that Plaintiff is capable of engaging in light work, and that Plaintiff's previous work in the housekeeping industry is categorized as medium work, the ALJ's conclusions at the fourth step that Plaintiff is able to perform his past relevant work, and consequently, that Plaintiff was not disabled, were reached in error as they are negated by the evidence.  Indeed, the Commissioner concedes that the ALJ's finding that Plaintiff could perform medium work was not supported by substantial evidence and consequently, that Plaintiff would be unable to perform his past relevant work in the housekeeping industry, since it exceeds the demands of light work.  Therefore, since the ALJ's conclusion at step four is not supported by substantial evidence, remand is necessary.

Despite this concession, the Commissioner nevertheless argues that the ALJ's determination that Plaintiff is not disabled should be affirmed.  The Commissioner asserts that the evidence in the record supports a finding of not disabled and that, had the ALJ continued on to the fifth step, he would have concluded that Plaintiff possessed the capacity to perform other work.  The Commissioner's argument is unavailing, however, because of the burden shifting that occurs between the fourth and the fifth step of the disability analysis.  As previously explained,

although the Plaintiff bears the burden of persuasion on steps one through four, at the fifth step, the burden shifts to the Commissioner.  At the fifth step, the Commissioner must prove that the Plaintiff is capable of obtaining other gainful employment and that jobs, which the individual can perform, exist in substantial numbers in the national economy.  Thus on remand, the ALJ must address the question of whether the Commissioner has satisfied this burden before determining whether Plaintiff is disabled.

*(2) The ALJ's Conclusion as to Plaintiff's Mental Impairments*

In light of the need for remand in this case, it is unnecessary to address Plaintiff's additional contentions that the ALJ erred in his treatment of Plaintiff's mental impairments. However, for the purpose of providing some guidance to the ALJ, the Court will note some errors it observed in the ALJ's assessment of the effect of Plaintiff's claimed mental impairment on his residual functional capacity, which should not be repeated on remand.

In determining the degree of functional loss resulting from Plaintiff's claimed mental impairment, see 20 C.F.R. § 404.1520a, the ALJ evaluated Plaintiff's mental status under Listing 12.04, Affective Disorders, which is found in Appendix 1 to Subpart P – Listing of Impairments, and rated the degree of Plaintiff's functional loss in the four "B" criteria areas.  The four areas, which are used to assess a claimant's ability to perform work-related activities, are: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation.  In assessing the first three functional areas, the ALJ rates the degree of limitation on a five-point scale of none, mild, moderate, marked, or extreme.  In assessing the fourth functional area, the ALJ determines the number of episodes on a four-point scale of none, one or two, three, or four or more.

13

In this case, the ALJ considered Plaintiff's limitations in the four functional areas and concluded that Plaintiff's mental impairment did not prevent him from being able to perform unskilled work. In reaching this conclusion, the ALJ determined that Plaintiff was mildly limited in his social functioning and that Plaintiff was not limited in his concentration, persistence, and pace. These conclusions, however, are not supported by substantial evidence.

In reaching the conclusion that Plaintiff was mildly limited in his social functioning, the ALJ gave some deference to the assessment of Plaintiff's treating psychiatrist, Dr. Dela Cruz, that Plaintiff had moderate difficulty with social functioning. (R. at 250.) But ultimately, the ALJ discredited Dr. Dela Cruz's assessment on the basis that no specific examples of Plaintiff's difficulty in interacting with others were noted on the Mental Impairment Questionnaire Form or in Plaintiff's treatment notes and on the basis of the ALJ's own impression that Plaintiff "does get along with others—such as family members, friends, neighbors, etc." (R. at 21.)

The reports of treating physicians are to be accorded great weight, Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999), and may not be rejected simply on the basis of the ALJ's own credibility judgments, speculations, or opinions, Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Dr. Dela Cruz opined that Plaintiff was moderately limited in his social functioning. (R. at 250.) It can be assumed that Dr. Dela Cruz's opinion was amply supported by his extended treatment of Plaintiff and therefore that recitation of specific examples was not required. Furthermore, the record does not support the ALJ's findings that Plaintiff's social functioning ability is only mildly limited. Indeed, Plaintiff's own testimony contradicted the ALJ's finding. When Plaintiff was asked during the hearing whether he went out or socialized with any friends or family members, he responded that, contrary to his activities in the past, he went out

14

infrequently because he preferred to be alone and because he feels "bad" around people.  (R. at 34.)  Thus, Dr. Dela Cruz's moderate limitation is supported by the record and it was error for the ALJ to not give it more weight in the evaluation of Plaintiff's social functioning ability.

In reaching the conclusion that Plaintiff suffered no limitation in concentration, persistence, and pace, the ALJ acknowledged that Dr. Dela Cruz opined that Plaintiff had moderate difficulty in completing common workplace tasks, but he discredited this assessment on the grounds that it had no clinical basis.  The ALJ also relied on his on observations of Plaintiff during the hearing and the Plaintiff's testimony that he is able to travel to the Dominican Republic in determining that Plaintiff suffered no limitation in concentration, persistence, and pace.  (R. at 22.)

While an ALJ is permitted to consider his own observations of the claimant, "they alone do not carry the day and override the medical opinion of a treating physician that is supported by the record."  Morales, 225 F.3d at 318.  Dr. Dela Cruz's assessment of Plaintiff's moderate difficulty in maintaining concentration, persistence, or pace is supported by his report.  In evaluating Plaintiff's mental abilities and aptitudes to do unskilled work, Dr. Dela Cruz reported that Plaintiff was unable to meet competitive standards in his ability to maintain attention for two hour periods; in his ability to accept instructions and respond appropriately to criticism from supervisors; and in his ability to get along with co-workers.  (R. at 249.)  Since Dr. Dela Cruz's assessment that Plaintiff has moderate difficulty in maintaining concentration, persistence, or pace was supported by the record, the ALJ should not have discredited it simply on the basis of his own credibility judgment or his own medical opinion.  See Kent v. Schweiker, 710 F.2d 110, 115-16 (3d Cir. 1983) (finding that conclusions that are a "function of an ALJ's own medical

15

judgment" are "not within the ambit of the ALJ's expertise" and cannot be permitted to stand).

Therefore, on remand, when the ALJ considers the combined effect of Plaintiff's physical limitations and mental impairments on Plaintiff's capacity to engage in gainful employment, he should refrain from repeating these conclusions that are not supported by substantial evidence. Additional evidence as to the degree of functional loss resulting from Plaintiff's mental impairment may be required, and most likely, a vocational expert's testimony will be needed.

### III. CONCLUSION

For the reasons set forth above, the determination of the Commissioner will be reversed and the case remanded for further proceedings in accordance with this opinion.  An appropriate order implementing this opinion will be entered.


/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: December 6, 2007